**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO.: 5:14CV115-RLV**

| | |
|---|---|
| FELIPE A. PRIAST,<br>    Plaintiff,<br><br>    v.<br><br>DCT SYSTEMS GROUP, INC.; and<br>DATAMATICS CONSULTANTS, INC.,<br>and JEFFREY TELFARE, SR.,<br>    Defendants. | )<br>)<br>)<br>)   Memorandum and Order<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court upon Defendants' respective motions to dismiss, filed August 19, 2014, and September 12, 2014.[1] (Docs. 30, 34−35).

It is appropriate for the Court to consider matters outside the pleadings (*e.g.*, affidavits, declarations, etc.) since Defendants do not move for dismissal pursuant to Rule 12(b)(6) or 12(c). *See* FED. R. CIV. P. 12(d).

**I.   Nature of Case**

On January 9, 2013, Plaintiff Felipe A. Priast ("Priast"), a "Senior independent IT consultant," entered into a written "SERVICE AGREEMENT – Independent Contractor" ("Agreement") with Defendant Datamatics Consultants, Inc. ("Datamatics").

---

[1] The original motion filed by Datamatics on July 29, 2014 (Doc. 10), is rendered moot by its latter renewed motion, which is being submitted in light of Plaintiff's motion for leave to file an Amended Complaint, filed August 29, 2014 (Doc. 32).

Datamatics is "a sourcing and placement company that hires engineers and other IT consultants around the world and places them with companies for discrete projects." (Doc. 34 / Attachment 2 − Green Decl., ¶ 3). Datamatics' headquarters is in Duluth, Georgia. (Id., ¶ 4).

DCT Systems Group, LLC ("DCT") is an intellectual property consulting and integration company with its principal place of business in Norcross, Georgia, located in Gwinnett County, Georgia.[2] (Doc. 30 / Exh. A − Thakkar Aff., ¶¶ 3−4). Mr. Chittranjan "Chuck" Thakkar ("Thakkar") is a member and manager of DCT.[3] (Id., ¶ 2).

Pursuant to the Agreement, Datamatics placed Priest (the "Contractor") with DCT (its third-party "Customer") for a tentative twelve month assignment.[4] The DCT assignment entailed Priest working with Lowe's Home Improvement ("Lowe's") at its headquarters in Mooresville, North Carolina. (Compl.). Priest was assigned to the "Stage Gating Program" project at Lowe's, which Plaintiff contends was "an auditing and governing type of job" in

---

[2] Although Plaintiff names "DCT Systems Group, Inc." as a defendant in his Complaint, the filings reveal, and the parties do not dispute, that the intended corporate defendant is actually "DCT Systems Group, LLC." This error is the impetus for DCT's motion to dismiss. Plaintiff's Amended Complaint seeks to remedy this error in part by naming the individual owner and manager of DCT (Thakkar) as a defendant rather than the corporate entity.

[3] Plaintiff also refers to Thakkar as the President of DCT. (Compl., 2).

[4] While not directly relevant to the instant motions, the terms of the Agreement contemplated that the *tentative* requirement for the project was twelve months and that the work would commence on January 13, 2014. However, the Agreement also stated:

> Notwithstanding the above, the Agreement may be terminated by DCI[Datamatics] at the request of the Customer, **with or without cause**, upon notice to the Contractor[Priest]. The Contractor shall have the right to terminate the Agreement prior to the Termination Date with a Two Week Notice to DCI[Datamatics].

(Agreement, 3) (emphasis added). Indeed, Priest, who relocated from Boca Raton, Florida to North Carolina for this job, concedes in his Complaint that his position as a contractor for DCT was "at-will." (Compl., 2 and 11, ¶ 41). Priest appears to argue that this provision of the Agreement does not apply since termination did not occur "at the request of the Customer[DCT]" but rather at the insistence of Lowe's.

Lowe's IT Department. (Compl., 2). Defendant Jeffery Telfare, Sr. ("Telfare") was the Program Manager for the Stage Gating Program. (Id.) According to the Complaint, Lowe's "abruptly terminated" DCT's contract with Lowe's approximately five weeks after Plaintiff began his work. (Id.) As a result, on or around February 19, 2014, DCT "was forced to terminate the contract of all the IT consultants placed by Datamatics with them[DCT] (against its will), including Plaintiff." (Id. and 7−8).

On July 3, 2014, Plaintiff Priast, who is *pro se*, filed a Complaint alleging various federal and state law claims against Datamatics, DCT, and Telfare. (Doc. 1 / Compl.). In his Complaint, Plaintiff speculates about possible reasons for the termination of the business relationship between Lowe's and DCT.[5] Plaintiff alleges violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), conspiracy to violate RICO, fraud, civil conspiracy to commit fraud, breach of fiduciary duty, Title VII of the Civil Rights Code, and the North Carolina General Statutes, namely, N.C.G.S. § 75-1.1, *et seq*., and (Compl. 3). Plaintiff seeks to recover monetary damages − actual and compensatory – and the trebling of any monetary award, and / or punitive damages. (Compl., 3 and 19−20). All of Plaintiff's claims are related to, or in connection with, the Agreement, the DCT / Lowe's Stage Gating

---

[5] For example, Priast represents that "circumstantial evidence and the chronology of events has led [him] to believe" that DCT's contract termination at Lowe's was due to Lowe's discovery of improper (unethical or illegal) conduct on the part of Lowe's former Chief Information Officer (who resigned approximately two weeks after Lowe's terminated its DCT contract) and DCT managers working on Lowe's premises, including Defendant Telfare. (Compl., 2). More specifically, Plaintiff contends that DCT billed Lowe's for consulting services that were never performed and that DCT inflated the value of services actually performed by DCT IT consultants. (Compl., 2, 9−15).

Program, DCT's termination by Lowe's, and the impact of Lowe's decision to terminate its contract with DCT.[6]

The Clerk entered default against Defendant Jeffrey Telfare, Sr., on July 29, 2014. (Doc. 16). Plaintiff immediately sought a default judgment against Defendant Telfare. (Doc. 17). Plaintiff's motion for default judgment has not been ruled on.

On August 6, 2014, Datamatics filed an Answer to Plaintiff's Complaint. (Doc. 19). Plaintiff moved for entry of default and default judgment against Datamatics the same day. (Docs. 23−24). Plaintiff's motions seeking default are rendered moot by way of Datamatics' Answer and other responsive pleadings.

On August 29, 2014, Plaintiff moved for leave to file an Amended Complaint as a matter of course pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure. (Doc. 32). Plaintiff's Proposed Amended Complaint seeks to name Thakkar, owner and general manager of DCT, as a defendant in place of the corporate defendant, DCT. Datamatics opposes Plaintiff's motion. (Doc. 36).

Datamatics seeks dismissal in light of a forum-selection clause provided for exclusive jurisdiction within "any court located within Gwinnett County Georgia." (Doc. 34).

---

[6] The gist of Plaintiff's claim against Datamatics is that "Datamatics was informed of the racket taking place at the interior of Lowe's that Plaintiff witnessed and of the stereotype discrimination involved in the hiring of Plaintiff," yet Datamatics failed to take any remedial action. (Compl., 3, 9−10). Plaintiff alleges that Datamatics breached the terms of the Agreement in that Plaintiff was never given the opportunity to provide specialized services for the Customer DCT as contemplated and, therefore, not paid for 44 of the 52 weeks Plaintiff was supposed to work. (Compl., 18−19).
    Plaintiff contends that DCT hired Plaintiff "based on his nationality (Columbia) under the assumed negative stereotype that a person of Columbian nationality was going to be willing to participate in the racket . . . without reporting it to Lowe's upper IT management team . . . ." (Compl., 2 and 4−5). Plaintiff further contends that DCT's operations at Lowe's, including the hiring of Plaintiff, amounted to a conspiracy to defraud Lowe's. (Compl., 5, ¶¶ 14−15). In ruling on the Rule 12 motions, the undersigned need not consider whether Plaintiff has standing to assert all of the claims within his Complaint, particularly the allegations that DCT sought to defraud Lowe's.

Alternatively, Datamatics requests that the case be transferred to the Northern District of Georgia, the federal district that includes Gwinnett County, Georgia. (Doc. 34-1 / Def.'s Mem. In Supp.). Both Defendants DCT and Datamatics, or original intended defendant in the case of DCT, are located in Gwinnett County, Georgia. Id.

DCT moves to dismiss Plaintiff's claims against DCT pursuant to Rule 12(b)(2), (b)(4), and (b)(5) for lack of personal jurisdiction, lack of sufficiency of process and service of process. (Doc. 30, 35). Alternatively, DCT seeks dismissal under the doctrine of *forum non conveniens* in light of the forum-selection clause contained within the Agreement entered into between Plaintiff and Defendant Datamatics. While DCT's alternative argument is that the case should be transferred to Gwinnett County, Georgia if not dismissed altogether, DCT posits that *the only contract at issue* is the Independent Contractor Service Agreement entered into between Priast and Datamatics and that all of Plaintiff's allegations relate to that Agreement. In fact, Thakkar avers that "DCT Systems Group, LLC has at no time entered into any contract with Felipe Priast."[7] (Doc. 30 / Exh. A − Thakkar Aff., ¶ 7).

Plaintiff's motion to amend his Complaint has not been decided given the defense motions seeking dismissal and / or enforcement of the forum-selection clause. As suggested by Datamatics, amendment of Plaintiff's Complaint in this federal district is futile if this case is proper only in Gwinnett County, Georgia. (Doc. 36).

Plaintiff Priast has responded to Defendants' motions. (Docs. 27, 29, 33, 37−40).

These matters are now fully briefed and ripe for disposition.

---

[7] Absent obtaining the written consent of Datamatics, the Agreement *expressly prohibits* employment of the Plaintiff Priast (the "Contractor") by DCT (the "Customer") while the Agreement is in effect, or within six months following the end date. (Agreement, ¶ 14).

## II. Discussion[8]

### A. The Forum-Selection Clause Contained Within The Agreement Is Valid And Enforceable

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."[9] *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,* 134 S.Ct. 568, 581, 581−83 (2013) (addressing propriety of 28 U.S.C. § 1404(a) and doctrine of *forum non conveniens* as procedural mechanisms in federal court for enforcement of a forum-selection clause). Transfer pursuant to § 1404(a) is the prescribed enforcement mechanism of a forum-selection clause that "point[s] to a particular federal district." *Atl. Marine Const. Co.*, 134 S.Ct. at 579. However, the doctrine of *forum non conveniens* is the appropriate means for enforcement of a forum-selection clause that "point[s] to a state or foreign forum." *Id*. at 579−80.

In *Atlantic Marine*, the Supreme Court recently emphasized that forum-selection clauses agreed to by the parties "represents the parties' agreement as to the most proper forum." *Atl. Marine Const. Co.*, 134 S.Ct. at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). The Supreme Court explained that "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id*. (quoting *Stewart*, 487 U.S. at 33 (KENNEDY, J., concurring)). "For that

---

[8] Federal law governs both motions to transfer venue, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988), and motions to dismiss for *forum non conveniens*, *see e.g.*, *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 793 (5th Cir. 2007).

[9] Of course, this presumes that the transferee forum identified by the forum-selection clause satisfies statutory federal venue criteria − a question not at issue here, "Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in [28 U.S.C.] § 1391." *Atl. Marine Const. Co.*, 134 S.Ct. at 577, 578−580 (distinguishing transfer analysis from motion to dismiss for "improper" venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) due to failure to satisfy § 1391 and clarifying that forum-selection clause does not render venue "improper").

reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given *controlling weight* in all but the most exceptional cases." *Id*. (emphasis added).

The Supreme Court then explained how the typical § 1404(a) analysis changes when the parties' contract contains a valid forum-selection clause. *See Atl. Marine Const. Co.*, 134 S.Ct. at 581−83. There are three distinct differences in the § 1404(a) calculus. "First, the plaintiff's choice of forum merits no weight." *Id.*, 581. "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.*, 581−82. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules − a factor that in some circumstances may affect public-interest considerations." *Id.*, 582 (internal citations omitted).

Here, the basis for dismissal asserted by Datamatics is the forum-selection clause within the Agreement that governs the contractual relationship between Priast and Datamatics. (Doc. 34 / Attachment 2 – Green Decl., ¶ 6; Exh. A, ¶ 18). Paragraph 18 of the Agreement, entitled "Disputes," reads:

> Any irreconcilable controversy, dispute, misunderstanding, or claim arising out of or relating to this Agreement shall be subject to litigation. **DCI** [Datamatics] and **the Contractor** [Priast] agree to the exclusive jurisdiction of any court located with Gwinnett County[,] Georgia.

(Agreement, ¶ 18) (emphases in original). The forum-selection clause does not identify any particular state or federal forum but rather places exclusive jurisdiction in "any court located within Gwinnett County, Georgia." Id.

The Agreement's forum-selection clause is presumed to be valid and enforceable. *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 652 (4th Cir. 2010) (recognizing presumption of enforceability); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Plaintiff does not advance any legal argument that validity of the forum-selection clause is in question. In addition, the fact that jurisdiction in Gwinnett County is deemed "exclusive" renders the clause mandatory. *See e.g.*, *Gita Sports, Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F.Supp.2d 432, 436 (W.D.N.C. 2008).

In this case, because he defies the forum-selection clause, *Plaintiff Priast bears the burden* of establishing that transfer to the forum for which the parties bargained is unwarranted. *See Atl. Marine Const. Co.*, 134 S.Ct. at 581; *see also Giammettei v. Bertram Yacht, Inc.*, 2010 WL 2593612, at *3 (W.D.N.C. June 23, 2010). For the reasons more thoroughly explained by Datamatics in its papers, Plaintiff is unable to meet his burden. (Doc. 34-1, 4−7). The *forum non conveniens* analysis is modified in circumstances such as these, where a valid forum-selection clause is sought to be enforced. *Atl. Marine Const. Co.*, 134 S.Ct. at 581−83. As explained by the Supreme Court, factors ordinarily considered such as the plaintiff's choice of forum and the private interests of the parties carry <u>no</u> <u>weight</u>. *Id*. at 582. In addition, the original venue's choice-of-law rules do not apply. *Id*. Thus, one of the most significant public interest considerations in venue transfer analysis, choice-of-law, is negated by way of the forum-selection clause. *Id*. Finally, the nature of Plaintiff's allegations against Defendants fall squarely within the broad language of the contractual provision as Priast's claims are "arising out of or relating to the Service Agreement." Consistent with the holding in *Atlantic Marine*, and the policies relied upon therein, the parties should be held to their bargain regarding forum selection in "all but the most unusual cases." *Id*. at 576 ("[W]e conclude, a district court should transfer

the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.")

Under the applicable law, the Agreement's forum-selection clause's failure to point to a specific federal forum renders dismissal (rather than transfer) a proper remedy. *See Atl. Marine Const. Co.*, 134 S.Ct. at 579, 583, n. 8 ("Unlike a § 1404(a) motion, a successful motion under *forum non conveniens* requires dismissal of the case.") (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). However, the undersigned considers next whether transfer to another federal district court remains a viable option notwithstanding this fact. There is no authority precluding transfer as an avenue of relief. Given that Paragraph 18 of the forum-selection clause contemplates resolving disputes in "*any court* located within Gwinnett County, Georgia," Section 1404(a), which codifies the doctrine of *forum non conveniens* for transfer within the federal courts, is still available (if not required). *Id.* at 580 (observing that § 1404(a) "replace[s] the traditional remedy of out-right dismissal with transfer") (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).[10] Moreover, *Atlantic Marine* makes clear that the legal standard to be applied, and § 1404(a) factor analysis, is the same regardless of the status of the transferee forum. *Id.* at 580 ("courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum") (internal citations omitted). Datamatics' alternative request for relief is that the Court transfer the case to the Northern District of Georgia, which encompasses Gwinnett County, Georgia. For these reasons, in enforcing the forum-selection clause, the Court, in its discretion, may elect to transfer the case to another forum in Gwinnett County, Georgia.

---

[10] If the Court retains discretion to transfer the case to the Northern District of Georgia, Plaintiff's *pro se* status weighs in favor of transfer as opposed to outright dismissal.

9

### B. Plaintiff Failed To Properly Serve DCT Group Systems, LLC

It is undisputed that Plaintiff Priast framed his Complaint as brought against "DCT Group Systems, Inc." while the intended defendant entity is a limited liability company as reflected by filings recorded with the Georgia Secretary of State. (Doc. 35 / Exh. B − Proof of Corporate Registration for "DCT Group Systems, LLC"). Likewise, it is undisputed that DCT Group Systems, Inc. has no connection with the actual intended Defendant, DCT Group Systems, LLC. (Doc. 35 / Exh. A−Thakkar Aff., ¶ 6).

Although dismissal may be achieved for naming and attempting to serve the wrong party, Priast asserts in his motion for leave to amend that he provided *actual notice* of the lawsuit, and claims against DCT, to Thakkar both before and after commencement of litigation. (Doc. 32). The Thakkar Affidavit submitted on behalf of DCT Systems Group, LLC, and responsive filings by DCT confirm actual notice of the lawsuit.

Because the Court deems transfer to the Northern District of Georgia proper under the Agreement's forum-selection clause, and since Plaintiff's Proposed Amended Complaint seeks to name a new defendant associated with the actual intended DCT entity, dismissal of "DCT Systems Group, Inc." is also proper.

Thus, as Plaintiff's Complaint currently stands, the named Defendants are Datamatics and Telfare, who is in default. The Court defers ruling on Plaintiff's motion for leave to amend his Complaint.[11]

---

[11] The undersigned, in its discretion, will defer to the Northern District of Georgia on the question of amendment of Plaintiff's Complaint even though the court retains jurisdiction over the action until the record is physically transferred to the transferee court. *See Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 250 (4th Cir. 1991) ("The general rule . . . is that jurisdiction is not conveyed from the

### III. Order

**IT IS, THEREFORE, ORDERED THAT:**

1) Defendant Datamatics' motion to dismiss is **DENIED** and Datamatics' alternative motion for transfer is **GRANTED** (Doc. 34);

2) This civil action shall be transferred to the U.S. District Court, Northern District of Georgia, within which Gwinnett County lies, pursuant to the parties' agreement and valid forum-selection clause pursuant to 28 U.S.C. § 1404(a);

3) Plaintiff's motions for entry of default and default judgment against Defendant Datamatics (Docs. 23, 24) are **DENIED as moot**; and

4) DCT's motion to dismiss pursuant to Rule 12(b)(2), (b)(4), and (b)(5) (Docs. 30, 35) is hereby **DENIED without prejudice**.

Signed: January 13, 2015

Richard L. Voorhees
United States District Judge

---

transferor court to the transferee court until the record is physically transferred to the transferee court.") (citing *Robbins v. Pocket Beverage Co.*, 779 F.2d 351, 355 (7th Cir. 1985)).